[L. A. No. 13519. In Bank.—May 26, 1932.]

LANSING B. BAILEY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

W. W. Kaye for Petitioner.

Everett W. Mattoon, County Counsel, and S. V. O. Prichard, Deputy County Counsel, for Respondents.

CURTIS, J.—This is a proceeding in prohibition begun originally in the District Court of Appeal, Second Appellate District, Division One, which after decision by that court was transferred to the Supreme Court for hearing.

The object of the petition is to restrain the Superior Court of Los Angeles County from enforcing an order adjudging petitioner in contempt in failing to pay the sum of $175 for the support and maintenance of his two minor sons, and directing that he be incarcerated until he complies with said order. In March, 1930, petitioner herein as plaintiff secured an interlocutory decree of divorce from his wife, Lucille McCabe Bailey, on the ground of extreme cruelty. The custody of the two minor children of the couple, both boys, of the ages of approximately six and nine years, was given to the mother with the provision that their father should have their custody during their school vacation season if he provided a suitable place to take them and properly care for them, and the following order with respect to their support was made: "It is further hereby ordered, adjudged and decreed that, until further order of the court, the plaintiff shall pay to the defendant for the support and maintenance of the said children and for their clothes and education the sum of one hundred and seventy-five and 00/100 ($175.00) Dollars per month so long and while the said children are in her custody and care, the first of which payments shall begin on the 1st day of May, 1930, and that while the children shall be in the custody of the plaintiff, he

shall pay for the maintenance of the home for the children the sum of Eighty-seven and 50/100 ($87.50) Dollars per month on the 1st day of each month, and also he shall pay all reasonable bills for medical services and dental services for said children which may be required in their proper care." In May, 1930, the court reduced the payment to $150 per month, and in November, 1930, further reduced the payment to $125 per month. In April, 1931, the final decree of divorce was entered. Since the entry of the interlocutory decree the children have been residing with their mother in the city of Los Angeles with the exception of the months of July and August in 1930, and July and August in 1931 when, pursuant to said decree, the two children visited their father and remained with him on a ranch which he had leased at Arvin, Kern County, California. Petitioner has refused to pay to his divorced wife the sum of $87.50 for each of the months of July and August, 1931, the period of time during which the children were in his care. Thereafter, his divorced wife sought to have him declared in contempt of court for his failure to pay the total sum of $175. At the hearing upon the charge for contempt, the failure to pay was admitted by petitioner, but he attempted to excuse such failure upon the ground that he did not have the present ability to make such payments. In this behalf he testified that he had been engaged in farming operations at Arvin, California; that he had leased a ranch of about 350 acres and had planted it in seed potatoes, cantaloupes and Persian melons; that due to a cloudburst which occurred in August, 1931, his crops had been wholly destroyed; that he was in debt to the extent of $90,000, of which he owed $32,000 to his sister and her husband and the rest to general creditors; that his only assets consisted of a new Auburn automobile which had been bought under a conditional sales contract, a pipe-line which had cost him $2,377 and was situated on leased property, and some trucks used in his farming operations. He also testified that he had employed a foreman for $250 per month and that he had paid him for July but not for August. The wife testified that the house rent, which included water and garden care, cost her $45 per month; that she paid for the lights and gas in addition; that she had been working at a circulating library for $15 per week for a few months; that her mother sent her

about $25 a month, and that she would have to give up her position with the library as the younger boy, "Happy", had developed acute diabetes and she could not give him the required care and continue to work away from home. She explained that this boy required a special diet and expensive medical treatments. Upon this hearing an order was made declaring petitioner to be in contempt, punishment to be held in abeyance, contingent upon plaintiff paying the back rent (due upon the rented house) within ten days and all the amounts in arrears within thirty days. This order was entered as a minute order by the deputy clerk and subsequently an order prepared by the attorney for the wife was signed by the judge and filed. The latter order contained an express finding of petitioner's ability to pay. Petitioner thereupon sought and secured a writ of prohibition issued by the District Court of Appeal, Second Appellate District, Division One, based upon the ground that the finding of the trial court as to petitioner's ability to pay was wholly without support in the evidence.

■ It is, of course, well settled in this jurisdiction that a husband who is unable to obey a decree for the payment of alimony cannot be adjudged in contempt for not obeying such decree, unless he has voluntarily created the disability for the purpose of avoiding such payment. ■ And it is also well settled that the jurisdiction of the court to make an order for contempt may be successfully attacked unless the said order contains upon its face a finding of ability on the part of the person charged with contempt to comply with the original order. In the instant case the order signed by the judge and filed contained such an express finding. ■ There is absolutely no merit in the claim that the court was without power to file such order by virtue of the fact that a minute order had already been entered by the deputy clerk which did not contain such an express finding. Section 4178 of the Political Code provides that one of the duties of the county clerk is to "enter a synopsis of all orders, judgments, and decrees proper to be entered unless the court shall order them to be entered at length", and the fact that the deputy clerk, pursuant to said requirement, has entered such synopsis will not prevent the subsequent entry of an order signed by the judge.

It is next urged by petitioner that the determination of the trial court of petitioner's ability to pay finds no support in the evidence and that, therefore, the trial court was without jurisdiction to enter its order of contempt, which error should be corrected by the issuance of a writ of prohibition to restrain the trial court from proceeding to carry out its erroneous order. Respondents reply that the error, if any, of the trial court in the determination of the question of petitioner's ability to pay is, at most, only an error in the exercise of its admitted jurisdiction of the persons and subject matter and that, therefore, this finding is conclusive and a writ of prohibition which tests only the jurisdiction of the trial court is not available.

We cannot agree with the contention of petitioner that the finding of the trial court is wholly without support in the evidence, and it is, therefore, unnecessary for us to discuss what would be the proper procedure of this court if the contention had been well founded. It may be conceded that the question of petitioner's ability to pay was a close one. The fact that petitioner is deeply in debt and has no present income is not, however, determinative of his ability to pay this particular sum. Payment for the support of his minor children is as truly a legal obligation as the repayment of his loans or payment of his other business debts, and it is not necessary that payment for their support be made out of his net income, or assets which he may possess in excess of his debts. It may be a hardship, as petitioner contends, to require petitioner to apply his meager assets to the payment of this particular obligation rather than permit him to apply them toward the rehabilitation of his business, if such rehabilitation be possible. But the question of the advisability of requiring him to apply his assets, if any, to the payment of such obligation was, in the first instance, a matter for the determination of the trial court, and we are not inclined to disturb its conclusion. An examination of the assets of the petitioner as set out in his testimony discloses the fact that although most of the assets cannot be disposed of, as for instance, the new Auburn automobile which was being purchased under a conditional sales contract, and the pipe-line which had been installed on the leased property, the petitioner is the owner of "some trucks" used in his farming operations. We are not in accord

with petitioner's contention that the trucks are exempt from execution and, therefore, in a "legal sense" he does not have the ability to provide for the support of his minor children. The underlying purpose of the statute exempting from execution certain property is to provide for the support and welfare of the family of the person claiming exemption. The two children, although living apart from the petitioner, are a part of his family, and the property has been expressly reserved from the payment of other debts for their support. The reason for refusing to require the sale of a homestead and the application of the proceeds to the payment of alimony, as was held in *Ex parte Silvia*, 123 Cal. 293 [69 Am. St. Rep. 58, 55 Pac. 988], relied upon by petitioner, does not, we think, apply with equal force to the support of minor children. Moreover, it is to be noted that the petitioner is the owner of "some trucks", not just one truck, and no proof was offered that all of petitioner's equipment was worth less than $1,000. (Code Civ. Proc., sec. 690.) It follows from the fact that the record discloses some assets which can be applied to this payment of this obligation, that there *is at least a conflict in the evidence*, and the judgment of the trial court should be upheld.

■ Petitioner further insists, however, that the order embodied in the interlocutory decree of divorce requiring him to pay the sum of $87.50 per month to his wife during the months in which the two boys were in his care and custody was in fact an order granting alimony to his divorced wife, which, in view of the fact that the divorce had been secured by him on the ground of her fault, was void, and that disobedience to a void order cannot constitute contempt. (*McKannay* v. *McKannay*, 68 Cal. App. 701, 705 [230 Pac. 214]; *Andrews* v. *Superior Court*, 103 Cal. App. 360, 365 [284 Pac. 494].) The order on its face states that such sum is to be paid for the maintenance of a home for the children. This seems to be a reasonable provision for the purpose of stabilizing the home life of the children. It can readily be seen that for the mother each summer to be compelled to give up the house which she is renting and store the furniture for two months, would probably result in a constant change of neighborhoods and schools which would be detrimental to the children's welfare. The fact that the mother may indirectly benefit by such provision does not *ipso facto* render the

order one for the payment of alimony. The father's duty of support for his children does not end with the furnishing of mere necessities if he is able to afford more. It would appear from the terms of the order of the interlocutory decree that the father, at the time of the entry of the decree, was fairly prosperous, and if this be a fact, the requirement for the establishment of a permanent home was not unreasonable. ██ If petitioner's circumstances have since changed so that the order places upon him an intolerable burden, he is not remediless. The trial court entering the decree still retains jurisdiction to modify its orders if circumstances warrant the change, and the proper procedure for a party who is unable to comply with an order for the payment of alimony or the support of his minor children is to seek a modification of the order—not to resist its enforcement, thereby subjecting himself to contempt proceedings.

We are of the opinion, therefore, that the judgment of the trial court upon the hearing of the charge of contempt against petitioner for failure to pay $175 then due, based upon a finding of petitioner's ability to pay, which finding is supported by evidence, is a valid order within the jurisdiction of the court making it. It follows that the application of petitioner for a writ of prohibition should be, and it is hereby denied.

Preston, J., Langdon, J., Shenk, J., Waste, C. J., Tyler, J., *pro tem.*, and Seawell, J., concurred.